**UNION STORAGE CO., Inc., Appellant,**

v.

**John D. McINTYRE et al., Appellees.**

**No. 4488.**

District of Columbia Court of Appeals.

Argued March 24, 1969.

Decided Sept. 17, 1969.

**788** 

———◆———

William F. Reed, Washington, D. C., for appellant.

Harry L. Ryan, Jr., Washington, D. C., for appellees.

Before HOOD, Chief Judge, and KERN and GALLAGHER, Associate Judges.

1. He was subsequently indicted for the crime of arson and acquitted upon a finding that the crime was a product of his mental illness.

KERN, Associate Judge:

Appellees sued appellant, a warehouseman in the District of Columbia, for the value of certain furniture and household items which they had stored with it. The trial court sitting without a jury heard evidence that shortly before dawn on Sunday, February 16, 1964, a deranged[1] police officer, while on duty, reached between the iron bars[2] covering a ground floor window in appellant's warehouse located at 628 O Street, N.W., removed a protective wire-mesh screen wired to the window frame, broke a pane in the window and poured burning trash through it. He continued to feed the flame he had started until the fire caught onto material stored near the window, travelled to an elevator shaft ten feet away and spread up the shaft to the third floor where appellees' property was stored. All of their property was destroyed by the fire despite the fact that an automatic fire alarm located in the warehouse was triggered by the fire and the policeman himself turned in an alarm from an alarm box on the street.

Appellant's building was constructed entirely of concrete and brick and had metal-covered fire doors separating the different floors. Appellant employed a guard service to inspect the building from the outside at fixed hourly intervals during the time it was not open for business.

The trial court entered judgment for appellees in the amount of their claim for $1,250 after finding that appellant was negligent upon the stated grounds that it did not have a watchman inside its warehouse at all times and that the wire mesh "wasn't of proper security for the protection of that window" in the warehouse. The trial court also concluded that the absence of an inside watchman and the failure to have the wire mesh securely

2. The iron bars were 4½ to 5 inches apart and prevented anyone from entering the building through the window.

attached constituted the proximate cause of the fire and the resultant destruction of appellees' goods. Appellant argues that the evidence does not support the trial court's finding of negligence on its part and that in any event such negligence was not the proximate cause of appellees' loss.

The standard of care which a warehouseman must meet in the District of Columbia is that which a reasonably careful owner of similar goods would have exercised.[3] Therefore, appellant was under a duty to exercise reasonable care in the storage of appellees' property. In showing that it met its responsibility appellant presented evidence that the warehouse was of fire resistant construction, the fire alarm system in the warehouse was effectively operating, police and fireman service were near since the warehouse was in the heart of the city and easily visible to casual passers-by, a patrol at fixed intervals around the outside of the warehouse was provided continually during the time appellant was not open for business, and iron bars as well as wire-mesh screening wired to the frames covered the windows in the warehouse on the ground floor. In view of this uncontradicted evidence adduced by appellant, it is our opinion that the mere fact that no watchman was inside the warehouse at all times was insufficient to show lack of reasonable care on the part of appellant. Bellows v. Worcester Storage Co., 297 Mass. 188, 7 N.E.2d 588 (1937); Luke v. Security Storage & Van Co., 24 So.2d 692 (La.App. 1946). Compare Denning Warehouse Co. v. Widener, 172 F.2d 910, 13 A.L.R.2d 669 (10th Cir. 1949).

The other fact relied upon by the trial court to support its finding of negligence was that the wire screening constituted inadequate security for the warehouse. The trial court concluded it was inadequate because it "was easily pulled off" and was something "any twelve or fourteen-year-old kid could have pulled out". The evidence in the record does not justify this conclusion. There was simply no testimony that the screening material was flimsy or attached to the window frame in an insecure manner. We note that appellant had placed iron bars acoss the windows in addition to the wire mesh.

Finally, even if we assume *arguendo* that appellant's precautions were insufficient to demonstrate that it was reasonably careful in the storage of appellees' furniture we would be reluctant to conclude that arson under the circumstances peculiar to this case was a foreseeable result of appellant's negligence. Bellows v. Worcester Storage Co., *supra.,* is particularly applicable. There, a truck driver accidentally backed his truck into the door of a warehouse and loosened some of its boards. The truck driver *and the warehouse manager* pushed the boards back into place so the door appeared undamaged. Thereafter, the trucker became deranged. Eighteen months after he had damaged the door he entered the warehouse at night by pushing the loosened boards in the door apart and set fire to the warehouse. Suit was brought against the warehouse for loss of property stored and a jury found against the warehouse. The trial court entered judgment notwithstanding the verdict in favor of the warehouse and the Supreme Court of Massachusetts upheld this judgment.

'[T]he causal connection between the original wrong of a defendant * * * and the ultimate harm * * * has been broken and * * * something so distinct * * * has thereafter happened

---

3. At the time of this action D.C.Code 1961, § 28–1914 was in effect. It stated: A warehouseman shall be liable for any loss or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful owner of similar goods would exercise, but he shall not be liable, in the absence of an agreement to the contrary, for any loss or injury to the goods which could not have been avoided by the exercise of such care.
Since then the Uniform Commercial Code has been enacted which is essentially the same. See D.C.Code 1967, § 28:7–204 (1).

as to constitute an intervening efficient, independent and dominant cause.' * *. In the present case, the only normal or foreseeable result of negligence in failing to repair the door was that some person might enter and steal. What actually happened was harm of a wholly different kind, extraordinary, abnormal, irrational, and impossible to foresee. It cannot be attributed to any fault of the defendant. [7 N.E.2d 592]

*See also* DeFoe v. W. & J. Sloane, D.C. Mun.App., 99 A.2d 639, 640 (1953).

After a careful review of the record in this case we conclude that the judgment entered below in favor of appellees was unsupported by the evidence and must be reversed.

Reversed and remanded with instructions to enter judgment for appellant.

**4. Taxation** ⊚⇁900(5)